UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MOSAIC LAW CONGREGATION, a
California non-profit
corporation,

        Plaintiff,

   v.

AMCO INSURANCE CO.,

        Defendant.

NO. CIV. S-05-2293 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on the parties' cross-motions for partial summary judgment on the issue of coverage under plaintiff Mosaic Law Congregation's ("plaintiff") all-risk commercial property insurance policy (the "Policy") through defendant Amco Insurance Company ("defendant" or "AMCO").[1] In its motion, plaintiff seeks summary judgment on its claim for declaratory relief, arguing that the damage to its building during a rainstorm is a covered loss under the Policy because the

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

1

damage was caused by the roofing contractor's negligence. Defendant argues, on the other hand, via its cross-motion, that no coverage exists under the Policy because *plaintiff's* negligent acts and decisions caused the damage to the building and such conduct by plaintiff is not a covered cause of loss.

Plaintiff, alternatively, argues that during the rainstorm the building suffered a "collapse" within the terms of the Policy, thereby providing coverage for the damage; defendant responds that plaintiff has failed to proffer sufficient evidence of such a collapse.

Finally, relating to this incident, plaintiff also tendered defense of a lawsuit to defendant in which plaintiff is sued by a service company plaintiff hired to do clean-up and repairs at the building. Plaintiff is sued for failure to pay the service company, and plaintiff contends under the Policy defendant is obligated to defend plaintiff in that action. Defendant asserts that no such defense is required as no coverage exists under the Policy.

For the reasons set forth below, the court DENIES plaintiff's motion in its entirety and GRANTS in part and DENIES in part defendant's motion. Triable issues of fact remain as to the *cause* of the damage to plaintiff's building which prevent award of summary judgment to either party. The court also cannot determine as a matter of law whether the building suffered a "collapse" as that term is defined in the Policy; plaintiff's showing on that issue is insufficient to grant summary judgment in its favor. Finally, the court grants defendant's motion with respect to its duty to defend plaintiff in the other litigation

pursuant to the "General Liability Coverage Part" of the Policy but denies defendant's motion as to its duty to defend plaintiff under the "Directors and Officers Liability Coverage Part" of the Policy.

**BACKGROUND**

Plaintiff was insured under a commercial property insurance policy (the aforementioned "Policy") issued by defendant for the period February 22, 2004 through February 22, 2005. (Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts [Docket #25] ["PRUF"], ¶ 1.) Plaintiff entered a contract with Clark Roofing, Inc. ("Clark") to replace the roof on the classroom building at its facility. On September 8, 2004, Clark commenced demolition of the existing roof and continued working on the roof replacement through Wednesday, September 15, 2004. (PRUF ¶ 2.) On September 13, 2004, Carl Stein, a congregant of plaintiff who was assisting with reconstruction of the building, directed Clark to cease all work on the project as of sundown on September 15, 2004 in observance of Rosh Hashanah, a Jewish holiday, which began at sundown that day. Mr. Stein informed Clark that it would not be able to resume work on the roof until Monday, September 20, 2004. (PRUF ¶ 3.)

Plaintiff disputes that Clark was first informed about the work restrictions on September 13, 2004. Plaintiff asserts Mr. Stein informed Clark before Clark began the project on September 8 that the work on the roof would have to stop in honor of Rosh Hashanah and the Sabbath (which meant that work would have to stop by sundown on September 15, 2004 in honor of Rosh Hashanah and could not resume until September 20, 2004, the following

3

1   Monday, due to the Sabbath).  (Pl.'s Add'l Disputed Facts in
2   Opp'n to Def.'s MSJ [Docket #25] ["PADF"], ¶s 14, 20.)[2]
3   Plaintiff contends that Mr. Stein reminded Clark again of these
4   work restrictions on September 13, 2004.  (PADF ¶ 21.)

5   Before the weekend of September 17, 2004, John Clark, co-
6   owner of Clark, contacted Mr. Stein to advise him that there was
7   a chance of rain over the next couple of days.  (PRUF ¶ 4.)  Mr.
8   Clark advised Mr. Stein that the property was not completely
9   air/weather tight due to the required work stoppage.  Defendant
10  maintains that had Clark been able to work from September 15,
11  2004 to Friday, September 17, 2004, it could have installed three
12  layers of roofing material on the roof, which would have made the
13  roof of the building completely air/weather tight  (PRUF ¶ 5.)
14  Mr. Clark attests that despite being warned of the possibility of
15  rain and the condition of the roof, plaintiff remained adamant
16  that no further roofing work could take place until Monday,
17  September 20, 2004.  (Id.)

18  On Sunday, September 19, 2004, the rain came.  (PRUF ¶ 6.)
19  Plaintiff asserts that as a result of Clark's failure to install
20  a temporary covering over the plywood sheeting where the roof had
21  been removed, water collected on and penetrated through the
22  exposed roofing areas, thereby saturating the plywood on the
23  roof, as well the ceiling titles below, causing them to collapse.

---

25  [2]  Under Jewish Law, no work is permitted to be performed
from 18 minutes before sunset (or one hour after sundown) on
26  Fridays and on the eve of all Jewish holy days, through one hour
after sundown on the day the holy day concludes.  Rosh Hashanah
27  is the Jewish New Year and involves two full days of religious
observance.  Friday evening through Saturday evening is the
28  Sabbath.  (PADF ¶s 15, 17, 18.)

4

(Def.'s Resp. to Pl.'s Stmt. of Undisputed Facts [Docket #23] ["DRUF"], ¶s 5-7.) Defendant does not dispute that there was no temporary covering on the roof, but contends that its failure to apply such a covering was the direct result of the explicit directions of plaintiff to stop all work and leave the roof in an unprotected condition. (DRUF ¶ 5.) Defendant also disputes that the ceiling tiles collapsed. (DRUF ¶ 7.)

Plaintiff maintains that among other property, the collapsed ceiling titles and water intrusion damaged carpets, gas and electrical units, insulation, walls and beams, the security system, and light fixtures in plaintiff's administrative offices and classrooms. (DRUF ¶ 9.) Plaintiff retained ServiceMaster, Inc. ("ServiceMaster") to perform clean-up and restoration work.

Immediately after the damage occurred, plaintiff submitted a claim for benefits to defendant. (DRUF ¶ 10.) Defendant investigated the claim, which included visiting the premises, obtaining recorded statements of relevant parties, including plaintiff, Clark, and ServiceMaster, retaining engineers to inspect the property, and retaining coverage counsel for advice on the claim. (PRUF ¶ 8.) Ultimately, defendant denied plaintiff's claim. (PRUF ¶ 9.)

Subsequently, in May 2005, ServiceMaster filed a lawsuit against plaintiff based on plaintiff's alleged failure to pay ServiceMaster for its services. (PRUF ¶ 11.) Plaintiff tendered defense of the lawsuit to defendant on June 23, 2005. (PRUF

///
///
///

5

¶ 12.)  Defendant did not accept the defense.  (PRUF ¶ 13.)[3]

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); see <u>California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must be viewed in the light most favorable to the nonmoving party.  <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp.</u>, 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier

---

[3] The reasons why defendant denied plaintiff's claim for benefits and demand for defense of the ServiceMaster suit are irrelevant to this motion as the parties agree plaintiff's "bad faith" claims for breach of contract and breach of the implied covenant of good faith and fair dealing are not at issue on the instant motions.

of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**ANALYSIS**

**1.   Covered Cause of Loss**

The instant Policy excludes damage caused by rain unless the building first sustains damage by a "covered cause of loss." The Policy provides, in pertinent part:

> We [AMCO] will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage and described and limited in this section.
>
> * * *
>
> C.   The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
>   (1) the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow sleet, ice, sand and dust enters.

(Ex. A to Young Decl. in Supp. of Def.'s MSJ [Docket #21] at AL0000166.) Plaintiff contends that the cause of loss here is Clark's negligence in failing, despite prior notice of the inability to work over the Rosh Hashanah holiday and Sabbath, to

7

install a temporary cover on the roof to protect the building from rain during the work stoppage. Plaintiff maintains that contractor negligence is a covered cause of loss under the Policy. As support, plaintiff primarily relies on the Ninth Circuit's decision in Tento International, Inc. v. State Farm Fire & Casualty Co., 222 F.3d 660, 662 (9th Cir. 2000) wherein the court reversed the trial court's determination that no coverage existed under the policy's rain exclusion (which was similar to the Policy here), finding that under California's "efficient proximate cause" doctrine,[4] the insurance loss was actually caused by the contractor's negligent handling of the roof repair (the failure to install a temporary covering). The Ninth Circuit found that under the policy at issue, the contractor's negligence was not an excluded cause of loss. Id. at 663-64. See also Allstate Insur. Co. v. Smith, 929 F.2d 447 (9th Cir. 1991) (finding under similar facts to Tento, that the contractor's negligence in failing to install a temporary covering on the roof, which resulted in damage to the premises due to rain, was the "efficient proximate cause" of the insured's loss and the loss was not excluded by the policy's "faulty workmanship" exclusion which was ambiguous as a matter of law); accord Century Theatres, Inc. v. Travelers Property Casualty Company of America, 2006 WL 708667 (N.D. Cal. March 20, 2006).

---

[4] Said doctrine provides that where a loss is caused by a combination of covered and excluded causes, coverage under a policy of insurance applies where the covered loss is the "efficient proximate cause" of the loss. Garvey v. State Farm Fire & Casualty Insur. Co., 48 Cal.3d 395 (1989). The "efficient proximate cause" of a loss is the predominant or most important cause of a loss. Id.

8

Defendant, on the other hand, contends that the cause of loss in this case was not Clark's negligence but *plaintiff's* decision to leave the roof unfinished despite being warned by Clark of the possibility of rain and the fact that the roof was not in a watertight condition on September 15, 2004. Plaintiff's decision, defendant asserts, is not a covered cause of loss under the Policy. Defendant cites to the "Acts and Decisions" exclusion in the Policy which provides that AMCO will not pay for damage caused by or resulting from "acts or decisions [of the insured], including the failure to act or decide of any person, group, organization or governmental policy." (Ex. A to Young Decl., Exclusion 3.b. at AL0000165.)  Defendant argues this exclusion excuses it from providing coverage for damages caused by *plaintiff's* negligence. See e.g., Landmark Hospitality LLC v. Continental Casualty Co., 2002 U.S. Dist. LEXIS 27794 (C.D. Cal. July 2, 2002) (finding the policy's "acts and decisions exclusion" [which involved the same language as at issue here] was unambiguous and enforceable and would excuse the insurance company from providing coverage for damages caused by the plaintiffs' negligence).[5]

While the question of coverage under the Policy is a question of law for the court to decide, here, the court cannot resolve the question on summary judgment because the parties

---

[5] However, the court in Landmark did not decide whether coverage was, in fact, excluded under this provision because whether plaintiffs' acts were the predominate cause of the damages was not before the court; on the Landmark plaintiffs' motion for partial summary judgment, the court was asked only to decide whether the exclusion was unambiguous and enforceable. Id. at *7.

9

dispute *what* caused the loss.  Plaintiff proffers evidence in support of its position that Clark's negligence caused the damage, but defendant proffers evidence in rebuttal to argue that plaintiff was responsible for the damage.  Only where the facts are undisputed can the court determine proximate causation as a matter of law.  See Allstate Insur. Co. v. Smith, 929 F.2d at 451.  Otherwise, the issue of causation is a factual determination for resolution by the trier of fact.  Id.  Unlike Tento, Allstate, and Century Theaters, relied on by plaintiff, the issue of whether Clark's negligence caused the damage is factually in dispute.  In Tento, Allstate, and Century Theaters, there was no dispute that the contractors' negligence was at least *a* cause of the loss (in addition to the rain), and thus, the courts only had to determine whether the contractors' negligence was the "predominant cause" for purposes of the efficient proximate cause doctrine and then ascertain whether the loss was excluded by the relevant policies.  In this case, triable issues of fact exist as to the cause of the damage to plaintiff's building.  Those issues of fact must be resolved before the court can decide the question of coverage, and thus, the court denies both parties' motions for summary judgment on this issue.

   **2.   Additional Coverage – Collapse**

   As an alternative argument for coverage, plaintiff argues its building suffered a "collapse" of part of its internal structure as a result of the rainwater on the roof and because of faulty construction methods by Clark.  The collapse, plaintiff asserts, caused damage to the interior of the building and forced

10

plaintiff to move its classroom and administrative offices to a different location.  Plaintiff contends such circumstances give rise to a covered loss under the Policy.

The Policy provided additional coverage for a "collapse" as follows:

> **D.   Additional Coverage – Collapse**
>
> The term Covered Cause of Loss includes Additional Coverage-Collapse as described and limited in D.1. through D.5. below.
>
> 1.   With respect to buildings:
>
>      a.   Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

(Ex. A to Young Decl. at AL0000167-168.)  Plaintiff contends coverage exists under this provision, relying solely on the case of Panico v. Truck Insur. Exch., 90 Cal. App. 4th 1294 (2001).  According to plaintiff, in Panico, "the court determined that the falling of ceiling tiles under the weight of water could constitute collapse within the ordinary meaning of the word under an insurance policy."  (Pl.'s Opp'n to Def.'s MSJ [Docket #24] at 9:7-9.)

This court disagrees.  In Panico, the California court of appeal reversed a trial court's decision to grant a motion for non-suit, which was based only on evidence discussed by counsel in a mandatory settlement conference before trial.  The opinion, in large part, is a critique of the trial court's improper procedures to dispose of a case without trial.  The court did not evaluate coverage under the policy at issue there or make a

finding that a claim that a few acoustical titles had fallen from the ceiling constituted, as a matter of law, a collapse within the meaning of an insurance policy. Indeed, the court did not mention the policy language concerning "collapse" at issue. Id. at 1298-1300. While the court did note, in *dicta*, that if enough tiles fell down, such an event could be reasonably characterized as a collapse under the ordinary meaning of that term, it also remarked that "[o]ne tile of many, dislodged from a roof and leaving a relatively small opening in it, does not a 'collapse' make." Id. at 1300. Ultimately, the court found the trial court erred in granting a non-suit when a "dispute [remained] over whether the 'falling in' was big enough to rate the appellation 'collapse.'" Id.

Thus, this court cannot find as a *matter of law*, on the basis of Panico, that a collapse occurred in this case. Indeed, similar to Panico, here, a dispute remains as to whether the falling down of some acoustic ceiling tiles was "big enough" to constitute a collapse under the Policy. As the moving party on this issue, it is plaintiff's burden to proffer evidence sufficient for a finding in its favor. Plaintiff did not meet its burden in several regards. First, plaintiff did not proffer evidence as to the number of titles which purportedly fell as a result of the water saturation. Second, it appears that certain titles were removed by ServiceMaster during the clean-up of the building; plaintiff did not proffer evidence of the number of titles removed by ServiceMaster as opposed to the number of titles that fell due to the rain. Third, plaintiff did not proffer evidence that the building could not be occupied for its

12

intended purpose due to the fallen ceiling tiles, a requisite for coverage under the Policy.[6] As such, plaintiff's motion on this issue must be denied.

### 3. Defense of the ServiceMaster Lawsuit

In its motion, defendant moves for summary judgment on the issue of whether it was obligated to defend plaintiff in the lawsuit filed by ServiceMaster. Defendant argues plaintiff is not entitled to a defense of that action because no coverage exists under the Policy, either pursuant to the "General Liability Coverage Part" or the "Directors and Officers Liability Coverage Part." In opposition to defendant's motion, plaintiff asserts coverage only under the latter "Directors and Officers Liability Part," and as such, the court construes plaintiff's failure to respond to defendant's motion as to the General Liability Part as a non-opposition thereto (see E.D. Cal. L.R. 78-230(c)), and accordingly finds that no coverage exists under that Part.

As to the Directors and Officers Liability Part, the Policy provides coverage for liability incurred by plaintiff as a result of the "wrongful acts" of its directors and officers. Specifically, this coverage Part provides, in pertinent part, the following:

///

---

[6] Plaintiff's *statements* in its motion and opposition papers that the synagogue's administrative offices and school operations had to be relocated to a different building are not supported by any *evidence* submitted on the motions. Indeed, no one on plaintiff's behalf attests that indeed the offices were moved, let alone that they were moved *because of* the fallen ceiling tiles.

13

**PART I – COVERAGE**

**A.   AGREEMENT**

   We [AMCO] will pay those sums you become legally
   obligated to pay as damages because of any
   'wrongful act(s)' to which this coverage part
   applies . . . .  We will have the right and duty
   to defend any claim seeking damages . . . .

**B.   WHO IS INSURED**

   1.   You are an insured, but only with
        respect to an obligation to indemnify
        your 'directors and officers' with
        respect to their duties as such.

   2.   Your 'directors and officers' are insured,
        but only with respect to their duties as
        such . . . .

**PART II – DEFINITIONS**
. . .

   B.   'Loss(es)' under this coverage part shall include:
        Claims or proceedings occurred during the policy
        period against the 'directors or officers' for
        'wrongful acts,' as well as indemnities due the
        'directors or officers' pursuant to the operation
        of law or permitted by law to be paid as
        indemnity, as set forth in the church's by-laws,
        and/or rules of its governing body which determine
        and define such rights of indemnity.

   E.   'Wrongful acts' means any negligent act, error,
        omission, or breach of duty of your 'directors or
        officers' while acting in their capacity as such.

(Ex. A to the Young Decl. at 000047-50.)  Defendant asserts that this coverage Part does not apply to the ServiceMaster lawsuit because only plaintiff was sued in that action, not any directors or officers of plaintiff.  Defendant also argues that coverage is not afforded by this Part because there is no "wrongful act" upon which the lawsuit is based.  The ServiceMaster complaint asserts four causes of action against plaintiff: (1) breach of written contract; (2) account stated; (3) reasonable value; and (4) to

14

foreclose mechanic's lien. Defendant contends that with respect to each of the causes of action, plaintiff's decision not to pay ServiceMaster was a "deliberate, intentional act, not a negligent one," and thus, there is no *covered*, "wrongful act" at issue.

Defendant's first argument is unavailing because an insurer's duty to defend its insured in a lawsuit is "not merely determined by looking to the language of the complaint." <u>Mullen v. Glens Falls Insur. Co.</u>, 73 Cal. App. 3d 163, 169 (1977). Rather, the duty to defend should be determined by the facts the insurer learns from the complaint, the insured, and other sources, not merely from how the complaint is written. <u>Id.</u> Indeed, defendant cites *no* legal authority for its position that directors or officers of plaintiff must be named as defendants for coverage under the policy to apply. Moreover, the duty to defend exists if there is any potential for coverage under a policy. <u>Montrose Chem. Co. v. Sup. Ct.</u>, 6 Cal. 4th 287, 299 (1993). Even the bare potential or possibility of coverage will trigger the duty to defend. <u>Id.</u> at 295. As such, the court cannot find in favor of defendant on this issue.[7] To demonstrate it had no duty to defend under this coverage Part, defendant must do more than simply rely on the complaint itself.

As to defendant's second argument, defendant asserts that plaintiff's decision not to pay ServiceMaster was a "deliberate, intentional act" but proffers no evidence of this alleged fact.

---

[7] It is noteworthy that according to plaintiff, its decisions with respect to ServiceMaster were made by plaintiff's Board of Directors and thus, liability could seemingly be asserted against the directors in the SerivceMaster action.

15

(Def.'s MSJ [Docket #21] at 16:5-10.)  Not surprisingly, plaintiff disputes defendant's characterization of its conduct, arguing that its decision not to pay ServiceMaster was the result of plaintiff's "negligent" belief that defendant would ultimately pay benefits under the Policy for the damage to its building, from which plaintiff could then pay ServiceMaster.  However, like defendant, plaintiff also does not proffer any evidence in support of its position.  Absent admissible evidence, the court cannot resolve this issue.  As such, it must deny defendant's motion as to coverage under this Part.

**CONCLUSION**

For the forgoing reasons, plaintiff's motion for partial summary judgment is DENIED in its entirety and defendant's motion for partial summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED: March 9, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE